### McBROOM *v.* McBROOM.

### Opinion delivered November 17, 1919.

LOST INSTRUMENTS—RESTORATION—EXCHANGE OF DEEDS.—Appellee was sued for breach of promise, and in order to protect his property executed a warranty deed thereto to appellants; appellants to give a quitclaim deed back. *Held,* under the evidence appellee delivered the warranty deed to appellants, and subsequently appellants executed a quitclaim deed to appellee. The latter was lost or destroyed. *Held,* appellee was entitled to have his title in the lands quieted, as against the appellants.

Appeal from Benton Chancery Court; *Ben F. Mc-Mahan,* Chancellor; affirmed.

*Walker & Walker,* for appellants.

A parent may deed his land to his son in consideration of support and maintenance during his life, strengthened by the fact that the father was to receive a certain sum of money and one-third of the proceeds of the farm. 67 Ark. 526; 86 *Id.* 169; 97 *Id.* 13; 96 *Id.* 589.

The evidence is conclusive that appellee, old and afflicted as he was, selected appellant and his wife as the ones to care for him and made disposition of the property to compensate them for the care and maintenance. The court erred in its decree, and it should be reversed on trial *de novo* and the cross-bill of appellant sustained and the mortgage of Williams canceled and the bill dismissed.

*Tom Williams* and *A. L. Smith,* for appellees.

Delivery of the deed was necessary, and due delivery was proved in this case. 13 Cyc. 561. Recording the deed was not sufficient delivery and did not vest title where the deed is retained by the grantor. 8 R. C. L. 1007, 978. The evidence does not show that Thos. McBroom owed Edna Ridgway anything but shows he did not and there never was an actual conveyance except for a moment, and, if fraudulent as to creditors, it could not be taken advantage of by appellants unless that fact was set up in their answer, and it was not. 71 Ark. 302; 32 *Id.* 97; 96 *Id.* 184; 139 N. Y. 389; 90 Mo. 343; 9 Enc. Pl. & Pr.

There was no delivery of the deed; having been once delivered at the time it was made, there could be no second delivery, as there was no intention of passing title nor was the use of the paper requested for that purpose. T. J. McBroom took possession of the deed again and E. R. McBroom made no attempt to keep it. The decision of the chancellor is good on either of two grounds, viz., that the deed from T. R. to E. R. McBroom and the deed of E. R. to Thos. J. McBroom operated at the same time, so there was instantaneous passage of title back to Thos. R. McBroom as soon as he had deeded it away, and in legal effect that the title had never been out of him; or that if for any reason the quitclaim deed of E. R. McBroom failed to operate as a reconveyance at the time, the circumstances were such that a resulting trust arose, or even a trust *ex maleficio.* 73 Ark. 310; 84 *Id.* 189; 92 *Id.* 55. The decree of the chancellor is supported by

a great preponderance of the evidence and should be affirmed.

HUMPHREYS, J. Appellee, Thomas J. McBroom, instituted suit against appellants in the Benton Chancery Court to restore a quitclaim deed from appellants to him, conveying 340 acres of land in said county, particularly described in the complaint. The bill alleged, in substance, that appellee owned said lands; that, on account of said appellee's reputed wealth, Edna Ridgway, a resident of Kansas City, Missouri, for mercenary purposes only, had entangled him in a contract of marriage; that appellee, after consultation with appellants, his son and daughter-in-law, entered into an arrangement with them whereby he would convey the lands in controversy to them and they, in turn, reconvey them to him, so that the first deed might be placed of record when advisable in order to prevent Edna Ridgway from annoying and harassing him; that, pursuant to such an agreement between appellee and appellants, appellee executed and delivered a warranty deed, describing said real estate, to appellants on the 11th day of June, 1915, and, on the next day, appellants executed and delivered a deed, describing said real estate to appellees; that, due to an investigation of appellee's financial affairs by Edna Ridgway, at a later date, the first deed was recorded on April 24, 1917; that the deed from appellants to appellee was lost after the first deed was recorded, and was never placed of record; that appellees refuse to execute another conveyance of said real estate to appellee; that appellee has been in the continuous possession of and enjoyed the rents and profits from said lands; that appellants are asserting ownership under deed of date June 11, 1915.

Appellants answered, admitting that they executed a quitclaim deed to appellee for said lands on the 12th day of June, 1917, but asserting that at the time they had no title thereto for the reason that the warranty deed from appellee to them had not at the time been delivered; that they acquired title to said lands on the 24th day of

April, 1917, at which time appellee placed the warranty deed, executed by him to them of date June 11, 1915, on record, thereby intending to deliver said deed to them.

Appellants also filed a cross-bill, setting up that, after the delivery of said warranty deed by the act of recording same, appellee executed a mortgage on the land in controversy to Tom Williams, for $500, without right or authority, thereby casting a cloud upon their title.

Appellants prayed for a dismissal of the original bill and a cancellation of the mortgage. Tom Williams entered his appearance to the cross-bill, and the cause proceeded to trial upon the pleadings, depositions and exhibits thereto, which resulted in a decree, establishing and quieting the title to said real estate in appellee, and sustaining the mortgage of Tom Williams as a valid and subsisting lien thereon. From that judgment, an appeal has been prosecuted to this court, and the cause is before us for trial *de novo.*

The incidents leading up to the execution of the deeds in question are as follows: Appellee, a widower seventy years of age, obtained information that Edna Ridgway, a woman of forty years of age, residing in Kansas City, was matrimonially inclined. A courtship by correspondence ensued, which resulted in an engagement to marry, and a marriage contract binding appellee to pay Edna Ridgway one thousand dollars and deed her forty acres of land in Boone County, Arkansas. During the period of courtship lasting from May until October in the year 1914, the money was advanced in installments. According to arrangements by correspondence, appellee met Edna Ridgway at a Kansas City depot and accepted an invitation to her home. He remained in Kansas City quite a while, and boarded for some days in Edna Ridgway's home, during which time he provided edibles for the table. Before the visit was concluded, appellee discovered that his fiancee was not to his liking and refused to marry her. Thereupon, she instituted a suit for $30,-000 against him in the circuit court in Kansas City, for

trifling with her affections. After this sudden termination of the short courtship, he returned home and employed attorneys to defend the breach-of-promise suit. Later, he sought advice from Squire Hays. The squire advised him to convey the valuable farm in question to his son, E. R. McBroom, and record the deed, and, in self-protection, to take a conveyance back from his son and wife. Such an agreement was entered into by said appellee and appellants. On June 12, 1915, appellee, Thomas J. McBroom, and the appellants met in the office of Squire Hays at Siloam Springs, Arkansas, for the purpose of passing the title to said real estate by deed from Thomas J. McBroom to E. R. McBroom, so that it might be recorded when necessary to prevent annoyance or the further prosecution of the breach-of-promise suit by Edna Ridgway; and for the further purpose of taking a quitclaim deed from appellants to appellee, Thomas J. McBroom, so that he might have it recorded after the storm had passed.

The incidents thus related are gleaned from the undisputed evidence in the case. It is also undisputed that the warranty deed was prepared and retained by Squire Hays on the day before the meeting, and that the quitclaim deed, executed by appellants to said appellee, was signed, acknowledged and delivered to appellee on the day of the meeting, after Squire Hays parted with the custody or possession of the warranty deed.

Thomas J. McBroom testified, with reference to the disposition of the deeds, as follows:

"Q. What was done with that deed (referring to the warranty deed executed by him to E. R. McBroom) on that day?

"A. Squire Hays give the deed to E. R. McBroom.

"Q. You say that this deed was delivered by Squire Hays to E. R. McBroom in Squire Hays' office?

"A. Yes, sir.

"Q. How was it delivered to him?

"A. He passed it over to him.

"Q. That is, Squire Hays passed it over to him?

"A. He throwed it over on the table and said, 'Here's your deed, Ray.'

"Q. What did Ray do with it?

"A. He didn't do anything.

"Q. What became of it?

"A. After he had left the room, I picked the deed up after he had taken their acknowledgments of the other deed.

"Q. You say Squire Hays gave you the deed they had made to you?

"A. Yes, sir. He filled it out after they had left the room.

"Q. When you left there, you took both deeds with you?

"A. Yes, sir. He was some few minutes taking the acknowledgments and filling it out as a notary would, and they left while he was doing that."

G. C. Hays, the justice of the peace who prepared the deeds, testified as follows:

"Q. I now present to you an instrument in writing marked Exhibit 'D' to the deposition of Thomas J. McBroom, and I will ask you what it is.

"A. This is the deed I made out to Ray.

"Q. You said that you made another deed conveying the same land from E. R. McBroom and his wife back to T. J. McBroom, did you?

"A. Yes, sir.

"Q. What was done with the two deeds when they were completed?

"A. I gave E. R. McBroom his deed and T. J. McBroom his deed, and it occurs to me that when they got through with them, Mr. T. J. McBroom took both of them.

"Q. You say you gave Ray's deed to him—you mean you gave this deed to Ray—the one that conveys the land to him?

"A. Yes, sir."

E. R. McBroom testified that his father told him that he had executed a deed to him for the land in ques-

tion, but that he never saw or had possession of the deed in Squire Hays' office before he and his wife executed the quitclaim deed to his father.

Lena McBroom testified that she joined her husband on or before the 11th day of June, 1915, in the execution of a quitclaim deed to the lands in question, after her father-in-law, Thomas J. McBroom, stated that he had made a deed for the same lands to her husband; that she never saw the deed made by him to her husband at that time, and that no deed was delivered to them at Squire Hays' office.

Appellants insist that there was no delivery of the warranty deed in Squire Hays' office, and that for this reason the title to said lands did not pass to appellants under it until long after the execution and delivery of the quitclaim deed from appellants to said appellee. It is true that there is a conflict in the evidence as to whether there was a manual delivery of the warranty deed on that occasion, but delivery of a deed is largely one of intention on the part of the grantor. In the case of *Russell* v. *May,* 77 Ark. 89, this court said: "A delivery of a deed is essential to its validity. It cannot take effect without delivery, and what is a delivery depends upon the intention of the grantor. Any disposal of a deed, accompanied by acts, words, or circumstances which clearly indicate that the grantor intends that it shall take effect as a conveyance, is a sufficient delivery."

Again, it is said in the case of *Graham* v. *Suddeth,* 97 Ark. 283, that: "In order to constitute a sufficient delivery thereof (referring to a deed) it is not necessary that there should be an actual manual transfer thereof to the grantee or a formal acceptance thereof by him. The question of a delivery of a deed is largely one of intent; and if it clearly appears from the words or acts of the grantor that it was his intention to treat the instrument as his deed and to make a disposal thereof, indicating that it should be effective, then the delivery is sufficient."

The rule thus announced was also approved in the subsequent case of *Maxwell* v. *Maxwell,* 98 Ark. 466.

In the instant case, both the grantor and grantee went to Squire Hays' office with the avowed intention of effecting a transfer of title to said real estate from appellee, Thomas J. McBroom, to his son, for the specific purposes of protecting said lands from possible seizure, growing out of the breach-of-promise suit pending in the Missouri court, and a reconveyance thereof for appellee's protection. These purposes could not have been accomplished without a delivery of both deeds. It is evident that the parties left the office believing both purposes had been effected. This belief that the purposes had been accomplished reflects that Thomas J. McBroom, the grantor in the warranty deed, intended that it should be operative from the date of its execution. This manifest intention is supported by the evidence of the grantor and G. C. Hays to the effect that there was a manual delivery of the warranty deed before the quitclaim deed was delivered. If the finding of the chancellor were sustained only by the evidence tending to show manual delivery of the deed, we could not say such finding was against the clear preponderance of the evidence. The finding, however, is not only supported by this character of evidence, but also by the avowed purpose of the parties and the inherent probabilities of the case.

The finding that the warranty deed was delivered before the quitclaim deed renders it unnecessary to discuss the second issue raised by the answer to the effect that the deed was delivered and became operative on the 24th day of April, 1917. For that reason, we have refrained from setting out the substance of the evidence responsive to such issue.

It will be observed that it was not necessary for appellee to allege and prove his own fraud in order to recover. The gist of his complaint was to restore the lost deed which the undisputed evidence shows was lost or destroyed; and was not for the purpose of canceling his own fraudulent conveyance.

The appellants having acquired title to said real estate under the warranty deed of date June 11, 1915, by

delivery thereof to them the following day, the quitclaim deed subsequently executed by them had the effect of reconveying the entire title to said real estate in appellee, Thomas J. McBroom.

It follows that the mortgage executed by appellee, Thomas J. McBroom, to Tom Williams, to secure an indebtedness of $500 is a valid and subsisting lien on said real estate.

The decree of the chancellor quieting the title to said real estate in appellee, Thomas J. McBroom, and declaring the mortgage a valid and subsisting lien thereon, is therefore affirmed.